IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMIT GAURI, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Case No. 23 C 1747 |
| ) | |
| CATHERINE STEEGE, Trustee, ) | |
| ) | |
| Appellee. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Amit Gauri has appealed from an order by the bankruptcy court denying his motion under 11 U.S.C. § 554(b) to compel the trustee to abandon property of the estate. The property consisted of Gauri's majority membership interests in three limited liability companies that are certified as minority-owned and disadvantaged business enterprises (MBE/DBE). This Court has jurisdiction under 28 U.S.C. § 158(a). The Court affirms the bankruptcy court's order for the reasons stated below.

### Background

**A.    Gauri's bankruptcy case**

Gauri filed a chapter 11 petition in March 2021. This was not his first trip to bankruptcy court. In 2019, Gauri filed a chapter 11 petition for Black Dog Chicago, LLC, in which he owned an 80 percent interest. At that time, Black Dog Chicago held the membership interests in Black Dog Petroleum, LLC and Black Dog Foods, LLC, that later would be involved in Gauri's own bankruptcy case. A trustee was appointed in the

Black Dog bankruptcy case in September 2020. The trustee ultimately concluded that reorganization was not feasible because the operating entities' viability was dependent on MBE/DBE certification, and the membership interests were not marketable given the entities' negative net worth. The trustee moved, in March 2021, to convert the case to a chapter 7 liquidation. The bankruptcy court granted the motion in August 2021.

Gauri's own bankruptcy case—the present case—was filed in March 2021, right around the time the trustee filed the motion to convert in the Black Dog case. Gauri identified as assets his indirect interests in the two Black Dog operating entities (Black Dog Petroleum and Black Dog Foods), as well as a 100 percent ownership interest in AGPD Paving, LLC.

Meanwhile, in the Black Dog chapter 7 case, a secured creditor obtained permission from the bankruptcy court to conduct a foreclosure sale of Black Dog Chicago's interests in Black Dog Petroleum and Black Dog Foods. In February 2022, the City of Chicago, with which both entities held contracts, suspended their MBE/DBE certification due to issues regarding Gauri's ongoing control given the appointment of the bankruptcy trustee. But the suspension contemplated further proceedings heading toward decertification, and the entities continued to operate. Later in February 2022, at the foreclosure sale authorized by the bankruptcy court, Gauri's father purchased Black Dog's interests in the two entities and then transferred them to Gauri as a gift. In the words of the bankruptcy court, the effect of these transactions was like "pulling a rabbit out of a hat," as Gauri, who had indirectly owned less than all of the two entities' membership interests, now directly owned 100 percent of those interests.

AGPD Paving was not involved in the Black Dog Chicago bankruptcy case, as

Gauri was the direct holder of the 100 percent membership interest in AGPD. AGPD also was not and is not part of the City of Chicago's suspension/decertification proceedings. Gauri testified at the hearing on the present matter that the City is not the MBE/DBE certifying entity for AGPD.

Following his acquisition of the interests in the two Black Dog entities, Gauri then sought, in the present case, confirmation of a plan of reorganization that was based on the premise that his interests in the three LLCs would generate significant income that would repay his creditors in part. In October 2022, the bankruptcy court declined to confirm the plan after finding that Gauri had not acted in good faith, partly because he had made numerous misrepresentations during the pendency of the chapter 11 case. On November 16, 2022, the bankruptcy court converted the case to a chapter 7 liquidation on the motion of the United States Trustee.

Two days after the conversion, the bankruptcy court appointed Catherine Steege as chapter 7 trustee. That same day, Gauri moved to compel her to abandon his membership interests in the three LLCs on the ground that they had inconsequential value and benefit to the estate. This motion was filed under section 554(b) of the Bankruptcy Code, which provides that "[o]n request of a party in interest and after notice and a hearing the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b). Gauri's motion included an alternative request to exempt the property from the estate due to its claimed inconsequential value. The effect of a favorable ruling on either of these requests would be to leave the interests in the LLCs with Gauri, beyond the reach of creditors.

In mid-February 2023, the bankruptcy court granted Gauri's request for an expedited evidentiary hearing on the motion, setting the hearing for early March 2023. This was done after Gauri's counsel advised that the City of Chicago had tentatively set a hearing on decertification of the MBE/DBE entities for late March 2023. Gauri's counsel conceded, however, that "the city changes the [hearing] date regularly, so I wouldn't bet on anything happening any time soon." Feb. 15, 2023 Hrg. Tr. at 6-7.

**B.     The motion to abandon and the bankruptcy court's ruling**

As the Court has discussed, Gauri's chapter 7 estate includes majority membership interests in three companies with MBE/DBE certifications : Black Dog Petroleum LLC, an asphalt recycling and distribution business; Black Dog Foods LLC, a food distribution business; and AGPD Paving LLC, which lays asphalt to pave roads. Gauri currently holds 100 percent of the interests in the first two entities and 55 percent in the third. MBE/DBE certification provides a competitive advantage in securing government contracts. To obtain and maintain certification, the business owner must satisfy various administrative requirements, including the requirement that a minority-group owner must own a majority of the entity and must be able to operate the business. It appears to be undisputed that the City of Chicago's MBE/DBE program rules make it harder to transfer or sell a certified entity because of the need for the buyer to obtain MBE/DBE certification, which, in turn, requires (among other things) minority group status and business expertise.

At the evidentiary hearing, held on March 6, 2023, Gauri's counsel called two witnesses, Gauri and an accountant. Gauri testified that each of the entities had a negative net worth, i.e., their liabilities exceeded their assets, and he also gave

4

testimony to the effect that the entities were behind on payments to creditors. Gauri also testified briefly regarding the MBE/DBE decertification proceedings involving the two Black Dog entities. .Specifically, he stated that he understood the City of Chicago had suspended the two entities' certification due to the fact that—as a result of the Black Dog bankruptcy proceeding—the entities had been placed under the control of the bankruptcy trustee, as opposed to a minority-group owner. He testified that the reason he had reacquired the membership interests in the Black Dog entities after the UCC sale was to get back into compliance with the MBE/DBE certification, presumably so he could continue to operate the companies.

On cross-examination, the Trustee sought to elicit testimony tending to show that the membership interests had potential value. Gauri conceded that he had represented to the City just two months earlier that Black Dog Petroleum had successfully performed on its contracts with the City, had paid down $640,000 in debt over the previous six months (with more to come), and was "thriving and financially healthy." Mar. 6, 2023 Hrg. Tr. at 42. When confronted with this at the hearing, Gauri said that this statement amounted to "a little bit of fluff on there for the City"—i.e., that "it's embellished a little bit to make it look like we can perform our contracts," and "I don't know if I would a hundred percent define us as thriving and financially healthy"—despite the earlier representation. *Id.* at 41-42. Gauri also conceded that Black Dog Petroleum had a net income of $909,000 in 2021 and $731,000 in 2022. In addition, Gauri admitted that he had represented to the City, and repeated in court, that he believed Black Dog Foods was viable, admitting to further details supporting its viability in response to the trustee's questions. Gauri also admitted that Black Dog Petroleum and Black Dog Foods each

5

paid him a salary of $173,000 in 2022, a total of $346,000.

Regarding AGPD, Gauri testified that the company's assets were valued at $4.2 million in 2021 but that the value dropped to $2.5 million in 2022. He attributed the loss in value to a union strike during 2022 that impacted operations, but he said he did not expect any upcoming strikes. And later during cross-examination, Gauri indicated that he was hopeful of increasing AGPD's sales in 2023. Gauri purchased a 60 percent membership interest in AGPD in 2020 for $300,000, but he sold 5 percent for $15,000, to another minority-group businessman, just before conversion of the case to a Chapter 7 proceeding. Gauri conceded that AGPD was not part of the pending decertification proceedings by the City of Chicago, stating that "[t]he City doesn't have control over our certifications for that company." *Id.* at 56.

Gauri gave testimony indicating that if the two Black Dog entities were decertified by the City based on a finding that he was no longer in control, those two entities would not be able to survive. *Id.* at 61. The trustee attempted to explore on cross-examination the possibility of a sale of part of his interest to another minority-group owner, suggesting that would be a way to preserve the Black Dog entities' MBE/DBE status. Gauri replied that it would "depend[ ] on who the other owner is," *id.* at 65, and stated that he had tried without success to find another purchaser. He conceded, however, that he had sold a partial (10 percent) interest to another qualifying minority-group owner.

Gauri also called Daniel Greenman, a certified public accountant, to testify at the hearing. Greenman provides accounting, tax, and business consulting services to Gauri and the entities. He testified regarding figures on the companies' financial

6

statements, but the bankruptcy judge sustained objections to opinion testimony regarding the value of the equity in the entities, as Gauri did not qualify him as an expert on that topic. The judge also sustained, on similar grounds, an objection to questions to Greenman about the impact on the entities if they lost their MBE/DBE certifications. Gauri does not challenge these rulings on appeal. In sum, little of consequence was derived from Greenman's testimony.

No other witnesses testified at the hearing.

In closing argument before the bankruptcy court, Gauri's counsel argued that the entities had a history of losses and were dependent on their MBE/DBE certifications, which in turn depend on who owns the firms. He contended that there was no basis to believe that anyone would pay enough for the entities to generate a return on their equity in light of what he contended would be the speculative nature of such an investment. Counsel also noted that during the earlier Black Dog bankruptcy, the trustee in that case had been unable to sell that entity (which operated the two Black Dog entities at issue here) to any qualified minority investors and that its interests in the operating entities had been disposed of only by way of an "agreed carve-out" with its secured lenders. Hearing Tr. at 93. Counsel argued that any value that might be assigned to the interests was speculative and said this was why the debtor had claimed the interests as exempt due to their minimal value. He also noted that if the City revoked the MBE/DBE certification, the entities' contracts would fail, and the entities would fail as a result. Counsel conceded that Gauri bore the burden of proof on the question of abandonment of the interests but argued that the Trustee bore the burden on the separate question of exemption of the interests from the bankruptcy estate.

7

The Trustee's counsel began her closing argument by noting that deciding the question of exemption was premature because "the trustee's time to object to exemptions has not yet expired, and the trustee should have time to assess that." *Id.* at 98. On the question of abandonment, the Trustee's counsel emphasized that Gauri had the burden of proving the grounds for abandonment, and she argued that Gauri had not met that burden. Counsel argued that the entities had significant value as going concerns, as shown by their continued performance of their contracts, millions of dollars in resulting revenues, and significant payments to creditors. Counsel also pointed out the inconsistency between Gauri's "judgment today . . . that there's no value [and] they might not be viable entities" and his representation to the City of "the exact opposite. He says they're thriving financially, they are viable. And he talks about . . . these new contracts and these new abilities to make more money for these entities." *Id.* at 102. The Trustee's counsel further argued that the events relating to the prior Black Dog bankruptcy proceeding were not relevant because, at the time, COVID lockdowns were in effect that significantly impacted the marketability of the interests. Returning to the question of timing, counsel closed by stating that the court should not in effect award the interests to Gauri (as abandonment effectively would do), as "it may be that these are the most valuable assets in the estate, and *we would ask that for the creditors' benefit that we be allowed an opportunity to see what they may net*." *Id.* at 102-03 (emphasis added)

In rebuttal, Gauri's attorney argued that "we need this relief today so we can preserve the companies"—presumably a reference to the possibility of cancellation of the MBE/DBE certifications and any resulting loss of contracts. *Id.* at 103.

8

The bankruptcy judge made an oral ruling from the bench after the conclusion of closing arguments. The judge noted the "long history" of the Black Dog entities in bankruptcy court and said:

> the troubling thing, frankly, is it's kind of the same old same old again. I read what was filed with the City, and I had Mr. Gauri up here once again saying, oh, well, I guess maybe that was a little bit of an exaggeration . . . . Mr. Gauri constantly changes his story depending upon who he's talking to.
>
> . . . Mr. Gauri tells the City his companies are the best thing on earth, and he comes in here and tells us they're worthless . . . .

*Id.* at 105. The bankruptcy judge stated that, on the question of compelling the Trustee to abandon Gauri's interests in the entities,

> the answer, frankly, once again is no. These companies have tremendous value to Mr. Gauri. They may or may not have benefit to the estate. But . . . when there's an unclear question here, with these kind [sic] of facts, with the fact that Mr. Gauri is telling one set of people one thing and one set of people another thing, I am not going to compel the abandonment.
>
> The trustee can do her due diligence. The chips will fall where they may. But I'm not going to be complacent in a situation like this. So, the motion is denied.

*Id.* at 105-06.

As indicated earlier, Gauri's motion included an alternative request to find that the membership interests were exempt from the bankruptcy. The bankruptcy court did not address this request in its ruling, and Gauri did not press the point.

**C.    This appeal**

Gauri raises three issues on appeal. First, he argues that the bankruptcy court erred by failing to make specific findings of fact regarding the fair market value and realizable value to the estate of the membership interests in the three operating entities. Second, he contends that the bankruptcy court erred in failing to determine that the

9

Trustee did not meet her burden to rebut his contention that the membership interests were exempt from the estate and by failing to declare the property to be exempt. Third, Gauri argues that the bankruptcy court erred in holding that he had not met his burden of demonstrating that the membership interests were burdensome to or of inconsequential value and benefit to the estate. *See* Gauri Br. at 1-2.

Only the first and third of these issues are appropriately before the Court for review. The second involves Gauri's alternative motion to find the interests exempt from the bankruptcy estate. The bankruptcy court did not make a ruling on that request at or after the hearing. That was presumably due to the Trustee's argument that the request was premature because her time to object had not yet expired and she had not had sufficient time to investigate. Whatever the reason, however, there was no ruling by the bankruptcy court on the exemption request, and thus it is not properly before this Court on appeal.

On the remaining issues, the Trustee argues that the bankruptcy court properly exercised its discretion to deny the motion to compel abandonment, for two reasons. First, she contends, Gauri's testimony and evidence were inconsistent, self-serving, and did not present a credible basis for finding that the property had no benefit to the estate. Second, the Trustee says that because she had only recently been appointed, she had not yet been able to conduct due diligence to enable her to assess the property's value and benefit to the estate.

## Discussion

Section 554(b), by its use of the term "may," commits the decision whether to order abandonment of estate property to the discretion of the bankruptcy court. *Cf. In re*

*Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir. 1994) (considering similar wording in 11 U.S.C. § 330). Accordingly, this Court reviews the bankruptcy court's decision for abuse of discretion. *See id.*; *see also, e.g., In re Blasingame*, 598 B.R. 864, 868 (B.A.P. 6th Cir. 2019) (decision whether to require trustee to abandon property of the estate is reviewed for abuse of discretion); *In re Malden Mills Indus., Inc.*, 303 B.R. 688, 696 (B.A.P. 1st Cir. 2004) (same); *In re Viet Vu*, 245 B.R. 644, 647 (B.A.P. 9th Cir. 2000) (same). A court abuses its discretion if it bases its decision on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied. *See In re KMart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004); *see also In re Blasingame*, 598 B.R. at 868 (an abuse of discretion occurs only when the bankruptcy court relies upon clearly erroneous findings of fact or improperly applies the law or uses an erroneous legal standard).

A clear error exists when the record evidence "leaves the reviewing court with the definite and firm conviction that a mistake was made." *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948). A finding of clear error is precluded if the reviewing court simply would have weighed the evidence differently, because weighing evidence is a uniquely discretionary process entitled to deference on appellate review. *In re Matter of Russell,* 941 F.3d 199, 203 (5th Cir. 2019) (internal quotations omitted) (deference to the bankruptcy judge's decision is appropriate when the record reflects that the bankruptcy court weighed the evidence in a way that makes the result "plausible in light of the record taken as a whole.").

Under section 554(b), "[b]efore ordering abandonment, the bankruptcy court must find either: 1) the property is burdensome to the estate; *or*, 2) the property is both of

11

inconsequential value *and* inconsequential benefit to the debtor's estate." *Morgan v. K.C. Mach. & Tool Co.* (*In re K.C. Mach. & Tool Co.*), 816 F.2d 238, 245 (6th Cir. 1987). In this case Gauri sought abandonment on the second of these bases; he did not argue, and did not attempt to show, that the interests in the three entities were burdensome to the estate. Rather, he argued only that they would generate inconsequential value to the estate. Under that statutory ground, "inconsequential value and inconsequential benefit are two separate elements that must both be satisfied." *In re Baroni*, 654 B.R. 334, 358 (Bankr. N.D. Cal. 2023) (citing *K.C. Mach. & Tool Co.*, 816 F.3d at 245). It is undisputed that Gauri bore the burden of persuasion on these points. *See, e.g., In re Tadayon*, BAP No. NV-18-119-BKuTa, 2019 WL 1923044, at *5 (9th Cir. B.A.P. 2020) (party seeking abandonment bears burden of proof); *In re Szymanski*, 344 B.R. 891, 896 (Bankr. N.D. Ind. 2006); *In re Pilz Compact Disc, Inc.*, 229 B.R. 630, 635 (E.D. Pa. 1999) (same); *In re Dillon*, 219 B.R. 781, 785 (Bankr. M.D. Tenn. 1998).

The bankruptcy court effectively held that Gauri failed to meet his burden of persuasion. It is clear from the court's findings that it did not find credible or persuasive his claim that the interests in the entities were effectively worthless. The court based this, at least in part, on the inconsistent positions that Gauri had taken regarding the value of the interests: before the City of Chicago just two months earlier, he contended the entities had significant value, but before the bankruptcy court he said they were, in effect, worthless.

Part of Gauri's point on appeal seems to be that the inconsistency noted by the bankruptcy court is more apparent than real, as there is a difference between the value of the entities as ongoing concerns—which assumes their continued operation—and the

value of Gauri's interests, which arguably are hard to market given the requirements imposed by MBE/DBE certification. But even there, the bankruptcy court reasonably could conclude that marketing a controlling interest in successfully operating entities—even if the market for potential buyers is limited—had at least a potential to generate value for Gauri's creditors.

At the very least, the bankruptcy court did not clearly err in finding that Gauri's evidence did not carry his burden of establishing that the interests had inconsequential value and were of inconsequential benefit to the estate. In this regard, the court expressly took into account—and was entitled to take into account—the fact that the trustee had not yet had an adequate opportunity to investigate the matter given Gauri's request for an expedited determination.

The financial reports that Gauri presented, which had been prepared by him and his employees and not by outside accountants, reflected a negative net worth. But as the Trustee argued at the hearing, this evidence fairly could be viewed as simply snapshots of the financial condition of the entities as of a specific point in time. The bankruptcy court reasonably could find, based on the record and the procedural history of Gauri's bankruptcy case, that the Trustee had not had sufficient time to conduct her own investigation regarding the value of Gauri's interests. That aside, the Trustee presented other evidence showing that Gauri had taken significant six-figure salaries paid from company revenues. The bankruptcy court was also entitled to take into account Gauri's very recent statements to the City about the "thriving" financial health of the companies and his expectation that they would continue generating the same or greater revenues for 2023 and beyond. The court was also entitled to reject Gauri's

testimony discounting these statements as mere "embellishments" and, more generally, to consider that admission as casting doubt on the credibility of his testimony in support of the motion for abandonment.

Gauri takes issue with the bankruptcy judge's statement that his interests in the entities "may or may not have benefit to the estate." But this is best read as part and parcel of the judge's determination that Gauri's evidence on the question of inconsequential value was unpersuasive and contradicted and thus insufficient to carry his burden of persuasion. As such, the bankruptcy court's apparent lack of certainty regarding the actual value of the property does not give rise to reversible error; it was a function of the insufficiency of the evidence presented by Gauri, the party with the burden of persuasion.

Relatedly, Gauri's contention that the bankruptcy court erred by failing to make a specific finding regarding the property's value lacks merit. It was Gauri's burden to show that the property had inconsequential value *and* was of inconsequential benefit to the estate, and the bankruptcy court held that he failed to carry that burden. This was, in effect, a determination of value: the court found that the evidence did not show the interests had inconsequential value. That aside, the court was not required to find a specific value beyond its determination that Gauri had failed to carry his burden of proving the property's value was inconsequential. Gauri cites no case suggesting the contrary.

Gauri notes, correctly, that the Trustee did not introduce evidence regarding the value of the property. But the Trustee was not required to do so. A party that does not have the burden of persuasion is not required to affirmatively introduce contrary

14

evidence; it can simply argue that the opposing party's evidence is insufficient because it is not worthy of credence or weight. That is what the Trustee argued here. The bankruptcy court did not commit a legal error or otherwise abuse its discretion in failing to determine a specific value for the interests.

Abandonment of Chapter 7 estate property is a rare and exceptional act by a trustee because it releases assets of the estate to the debtor, free and clear of all debts. *In re K.C. Mach. & Tool Co.*, 816 F.2d at 246 ("[A]n order compelling abandonment is the exception [,] not the rule."); *In re Viet Vu*, 245 B.R. at 647 (same; quoting *In re K.C. Mach. & Tool Co.*). Though the bankruptcy court's findings were arguably a bit sparse, the court did not err in determining that Gauri had not carried his burden under section 554(b).

The Court's decision to affirm the bankruptcy court's ruling on the question of abandonment does not, of course, rule out the possibility that (to borrow the bankruptcy judge's language) the chips might fall differently on a second look. Nothing in the language of section 554 suggests a "one and done" rule on requests for abandonment. This is particularly so given the early stage at which the bankruptcy judge was required to consider the issue in connection with the ruling under review. Gauri is certainly free to request a fresh look at the possibility of abandonment of the interests. And, as the Court has indicated, his request for a determination that the interests are exempt remains before the bankruptcy court for decision.

## Conclusion

The Court directs the Clerk to enter judgment as follows: The Bankruptcy Court's March 6, 2023 Order denying the debtor's motion to compel abandonment is affirmed.

The debtor's appeal regarding the motion to claim exemption is dismissed.

Date: December 28, 2023

                                                                  _____
                                                                       MATTHEW F. KENNELLY
                                                                       United States District Judge